IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROSALYN A. FOUNTAIN,　　　　　*

　　　　Plaintiff,　　　　　　　　*

v.　　　　　　　　　　　　　　*　　　　Civil Action No.: RDB-05-2494

ANNE ARUNDEL COUNTY　　　*
GOVERNMENT,
　　　　　　　　　　　　　　*
　　　　Defendant.
*　　*　　*　　*　　*　　*　　*　　*　　*　　*　　*　　*　　*

## MEMORANDUM OPINION

This employment discrimination action arises out of a three-count Second Amended

Complaint filed by Rosalyn A. Fountain ("Fountain" or "Plaintiff") against the Anne Arundel

County Government ("the County" or "Defendant").  Fountain alleges that the County

discriminated against her by denying her admittance to a Correctional Program Specialist

training session and by failing to promote her to the position of Detention Officer II, in violation

of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq*.  Currently

pending before this Court is Defendant's Motion for Summary Judgment.  This Court has

jurisdiction pursuant to 28 U.S.C. § 1331.  The parties' submissions have been reviewed and no

hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2004).  For the reasons that follow,

Defendant's Motion for Summary Judgment is GRANTED.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Rosalyn Fountain is an African-American female employed by Anne Arundel

County as a Detention Officer I with the Anne Arundel County Department of Detention

Facilities ("Detention Center").  (Second Am. Compl. ¶¶ 5-6.)  She has held this position since

she began working there in 1983.[1]  (Second Am. Compl. ¶ 7.)  In 1985, Fountain filed her first

complaint with the Equal Employment Opportunity Commission ("EEOC") alleging that she was

subjected to sex discrimination regarding job assignments and the terms and conditions of her

employment.  (Pl.'s Mem. Opp'n Summ. J. Ex. 1.)  From 1985 to 2002, she raised many

additional concerns about sex discrimination in the Detention Center.  She filed an additional

complaint with the EEOC, generated memoranda and petitions regarding unfair job assignments

for females, participated in an interview on a local television show regarding the County's

alleged discriminatory and retaliatory acts, and sent letters to the County Executive alleging

discriminatory bias in promotions.[2]  (*See id.* at Exs. 2, 4, 6-10.)  On July 15, 2002, Plaintiff hand-

delivered a letter to then-Anne Arundel County Executive Janet Owens regarding "sexism,

racism and retaliation at the hands of Superintendent Richard Baker and his administration."

(Fountain Decl. ¶ 19; Pl.'s Mem. Opp'n Summ. J. Ex. 11.)  This was Plaintiff's last complaint

alleging discrimination before the particular events leading to this lawsuit.

## I.      Training

On February 20, 2003, Fountain emailed Mindy Ellison ("Ellison"), a Training

Coordinator, to solicit her opinion regarding Plaintiff taking a Case Management Training

("Training") program.  (Pl.'s Resp. to Def.'s Interrogs. Ex. 17.)  Ellison "strongly advise[d]" her

to take the course to help her further her career goals.  (*Id.* at Ex. 18.)  On February 24, 2003,

---

[1] In 1991, amidst Fountain's actions opposing sex discrimination, the County offered her a promotion to the position of Detention Officer II, a position equivalent to a sergeant, but she declined this offer so she could concentrate on obtaining her college degree.  (Fountain Decl. ¶ 6; Pl.'s Mem. Opp'n Summ. J. Ex. 3.)  Since then, Plaintiff has applied for and been denied several promotions, leaving her in the same position of Detention Officer I since 1983.

[2] There is no record of her successfully prosecuting either of her EEOC claims.

Fountain registered for the Training, scheduled for March 3 and March 4, 2003.  (Pl.'s Resp. to Def.'s Interrog. #2, at 11-12.)  On February 27, 2003, Anita Law ("Law"), the Director of Training, received an email from Molly Nussear, expressing concern that Ellison had stated that the Training was open to staff other than Correctional Program Specialists ("CPS's").  (Law Aff. Ex. 1, ¶ 4.)  Law alleges that the program was developed to train the existing CPS's in the "entirely new case management program."  (*Id*. ¶ 2.)  The program was limited to existing CPS's to focus them on the Detention Center administration's goals and because it "most directly affected their job duties."  (Def.'s Mem. Supp. Summ. J. ¶¶ 15-16.)  Law claims that Nussear's email was the first time she "recall[ed] realizing there had been some type of miscommunication regarding the Case Management Training."  (Law Aff. ¶ 5.)  She then discovered that Fountain had registered for the class and advised her that it was not the "most appropriate course for her to take." (*Id*. at  Ex. 2.)  Law told Fountain that she should not attend it and offered to "assist [her] in identifying [a training course] more appropriate and relevant to [Plaintiff's] career goals." (*Id.*)  On February 28, 2003, Plaintiff sent a letter to Julie Sweeney, the Senior Assistant County Attorney, concerning Law's email and notifying her that Plaintiff had been "systematically denied promotions."  (Pl.'s Mem. Opp'n Summ. J. Ex. 16.)  On March 3, 2003, Plaintiff went to the first day of Training despite Law's request that she not attend it.  (Law Aff. ¶ 8.)  Law then informed her she could not take the course.  (*Id.*)

Two Caucasian non-CPS's were permitted to attend the Training on the first day: Patrick March, a program specialist in the training unit, and Rebecca Nazario, a contractual employee. (Law Aff. ¶ 9; Baker Dep 43:16-18.)  Upon learning that two Caucasian non-CPS's were permitted to attend the training, Plaintiff sent a second letter to Julia Sweeney and County

Executive Janet Owens asking why a contractual employee was allowed to take the training when she, an employee for 19 years, was denied access.  (Pl.'s Mem. Opp'n Summ. J. Ex. 17.)  According to Law, March "was taking the class so that he could train staff in future sessions" and Nazario was "assisting with the research and implementation of the new case management program."  (Law Aff. ¶¶ 10-11)  Due to their respective roles, Law did not initially remove them from the Training.  (*Id.* ¶¶ 11-12.)  However, sometime either during the first day of Training or after it had finished, Baker advised Law to remove all persons from the Training who were not CPS's. (*Id.* ¶ 12.)  Accordingly, March and Nazario were removed and not permitted to attend the remainder of the course.  (*Id.*)

The County alleges that "[a]fter the CPS's were trained, the training was offered to non-CPS staff, including detention officers to make them aware of the changes accompanying the new system."  (Def's Mem. Supp. Summ. J. ¶ 31.)  Fountain, however, alleges that the training offered to her in early 2004 was less than one hour long and was not comparable to the two-day training offered on March 3rd and 4th that she was turned away from.  (Pl.'s Resp. to Def.'s Interrog. # 2, 14.)  She contends that "[t]o compare the two is thoroughly misleading and illogical."  (*Id.*)

## II.    Promotion

In 2002, the County advertised an open CPS II position, announcement number 02-022.  (Hopkins Aff. Attach. 1.)  Fountain applied for the position and was placed on the list of eligible candidates in May of 2003.[3]  (*Id.* at Attach. 2.)  Ultimately, eight candidates were interviewed

---

[3] The hiring procedures require the Personnel Office to evaluate all applicants to determine their relative qualifications, rank them on an eligibility list, and create a "certification list" when vacancies become available.  (Hopkins Aff. ¶¶ 6-7.)  For each vacancy, a certification

for three spots at the CPS II level during July of 2003. (*See* Roberts Aff. ¶ 5 & Exs. 1-6.) The interview panel consisted of three people: Travis Blevins and Sandora Cathcart, who were both Correctional Justice Program Specialists (the position responsible for supervising CPS's), and William L. Roberts ("Roberts"), the Assistant Correctional Facilities Administrator and chair of the interview panel. (*Id.* ¶¶ 1-2, 5-6.) The interview panel asked all the applicants the "same job-related questions" and "utilized the same criteria in scoring." (Roberts Aff. ¶ 6.) Fountain admits that she does not recall having any concerns during the interview and that there was nothing inappropriate in the interviewers' demeanor or questioning. (Baker Dep. 67:16-17; Fountain Dep. 47:12-15, 57:13-16.)

According to the interviewers' notes, George Care ("Care"), Patricia Masimore ("Masimore"), Phyllis Gehman ("Gehman"), and Vickie Wertz ("Wertz") scored the highest among the applicants with "final scores" of 95, 90.3, 86.3, and 85, respectively; Fountain's score was 83.3. (Roberts Aff. Exs. 1-7.) Thus, Roberts recommended Care, Masimore, and Wertz for the CPS vacancies and Gehman for transfer laterally to the Jennifer Road facility. (*Id.* at Ex. 7.) He sent these recommendations to the Superintendent for the Anne Arundel County Department of Detention Facilities, Richard Baker ("Baker"), who was ultimately responsible for approving all promotions and hiring selections. (*Id.* ¶¶ 11, 13.) Baker has never overruled an interview

---

list contains five names, appearing in the order in which they were ranked on the eligibility list. (*Id.* ¶ 10.) "The Detention Center is required to interview, or attempt to interview, all persons on the certification list" and is entitled to interview five people for each vacancy. (*Id.* ¶ 8.) However, if one of those people is unavailable to be interviewed, the Detention Center can request supplemental certification lists. (*Id.* ¶ 10.) In this case, the Detention Center submitted two supplemental certificates for these vacancies, dated July 14, 2003 and July 18, 2003. (*Id.* ¶ 14 & Attach. 2.) Once the Detention Center has completed the interviews, it makes the final selection and notifies the Personnel Office of its decision. (*Id.* ¶ 9.)

panel's recommendations for selection and always accepts their recommendations.  (Baker Dep.

20:13-22:2, 62:17-63:12.)  Accordingly, he approved the recommendations that Care, Masimore,

and Wertz fill the three vacant CPS II spots on September 3, 2003.  (Roberts Aff. Ex. 7.)

The County did contact Fountain for another interview for CPS II in November 2004, but

she chose not to interview for the position.  (Fountain Dep. 60:7-13.)  Plaintiff admits that the

County has promoted other officers who signed the petitions opposing sex discrimination.  (Pl.'s

Resp. to Def.'s Interrog. # 9, 28-29.)

**III.    Procedural History**

On March 11, 2004, Fountain filed a Charge of Discrimination with the EEOC.  Unable

to find evidence of discrimination, the EEOC mailed Fountain a right to sue letter on June 20,

2005.  On September 8, 2005, she filed a Complaint in this Court against Janet S. Owens,

County Executive of Anne Arundel County, Richard. J. Baker, Superintendent of Anne Arundel

County Department of Detention Facilities, Robin R. Harting, Correctional Facility

Administrator of Anne Arundel County Department of Detention Facilities, and Terry Kokolis,

Assistant Correctional Facility Administrator of the Anne Arundel County Department of

Detention Facilities, alleging that they violated her rights under Title VII.  On September 21,

2005, she filed an Amended Complaint adding as a defendant the Anne Arundel County

Government ("the County").  (Paper No. 4.)

On February 1, 2006, Defendant Janet Owens filed a Motion to Dismiss, or in the

alternative, Motion for Summary Judgment on the grounds that there is no individual liability

under Title VII.  (Paper No. 11.)  Also on February 1, 2006, the County filed: (1) a Partial

Motion to Dismiss, or in the alternative, Summary Judgment on grounds that "[w]ith the

exception of one incident in September 2003, all of the alleged discriminatory acts included in

the Amended Complaint were not timely filed with the United States Equal Employment

Opportunity Commission ('EEOC') and/or f[e]ll outside of the Plaintiff's Charge of

Discrimination filed with the EEOC in March 2004," (Paper No. 12); and (2) Motion to Strike

Portions of the Amended Complaint (Paper No. 14).  On February 14, 2006, the County filed a

Supplemental Motion to Dismiss, or in the alternative, Motion for Summary Judgment.  (Paper

No. 15.)  On February 21, 2006, Plaintiff moved for leave to file an amended complaint.  (Paper

No. 20.)  Following a telephone conference in which counsel gave their consent, this Court

ordered that Defendants' previous motions (Papers No. 11, 12, 14 and 15) were moot and

granted Plaintiff's motion to file a second amended complaint.

On March 24, 2006, Plaintiff filed a three-count Second Amended Complaint against the

Anne Arundel County Government only.  (Paper No. 24.)  Count I of the Second Amended

Complaint alleges that the County retaliated against Fountain for "oppos[ing] and report[ing]

what she in reasonable and good faith believed to have been unlawful discrimination at work," in

violation of Title VII.  (Second Am. Compl. ¶ 19.)  Count II alleges that the County

discriminated against Fountain on the basis of her race, also in violation of Title VII.  Finally,

Count III alleges that the County's discriminatory and retaliatory actions violated 42 U.S.C. §

1981.[4]  All three Counts focus on two employment actions: the denial of a training opportunity in

March of 2003, and the failure to promote Fountain to the position of CPS II in September of

2003.  On November 20, 2006, Defendant filed the subject Motion for Summary Judgment.

(Paper No. 36.)

---

[4] This was the first instance in which Plaintiff claimed a violation of 42 U.S.C. § 1981.

## STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Only "facts that might affect the outcome of the suit under the governing law" are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* A genuine issue of material fact may exist if the evidence presented indicates a factual dispute that could be resolved in favor of the non-movant. *Rachel-Smith v. FTData, Inc.*, 247 F. Supp. 2d 734, 742 (D. Md. 2003) (citing *Anderson*, 477 U.S. at 248-49). The court makes all reasonable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, the nonmoving party must bring forth evidence upon which a reasonable fact finder could rely. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). In considering a motion for summary judgment, a judge's function is to determine whether sufficient evidence supporting a claimed factual dispute exists to warrant submission of the matter to a jury for resolution at trial. *Anderson*, 477 U.S. at 249. If the court finds that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law, then the granting of summary judgment is mandatory. *Celotex*, 477 U.S. at 322.

## ANALYSIS

Plaintiff Rosalyn Fountain has brought claims under Title VII and 42 U.S.C. § 1981 for two actions taken by her employer, Defendant Anne Arundel County Government, in denying

her a training opportunity and in failing to promote her.  Defendant has moved for summary judgment on three grounds: (1) the denial of training claims are untimely; (2) Plaintiff's retaliation claims must fail because there is no causal connection; and (3) Plaintiff cannot demonstrate that Defendant's legitimate, nondiscriminatory reasons for denying her a training opportunity and promotion are a pretext for discrimination or retaliation.  (Def.'s Mem. Supp. Summ. J. 2.)  These issues are addressed in turn below.

In Title VII and section 1981 employment discrimination claims,[5] courts apply the burden-shifting test first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, Fountain must present enough evidence to make a *prima facie* case of discrimination. *Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 142-43 (2000).  Second, once the plaintiff establishes a *prima facie* case, the burden shifts to the defendants to produce evidence that the adverse employment actions were taken against the plaintiff "for a legitimate, nondiscriminatory reason."  *Id.* at 142 (citing *Tex. Dept. Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)).  Third, the plaintiff is "afforded the 'opportunity to prove by a preponderance of evidence that the legitimate reasons offered by the defendant[s] were not [their] true reasons, but were a pretext for discrimination.'"  *Id.* (quoting *Burdine*, 450 U.S. at 253).

## I.      Race Discrimination - Counts II and III

Fountain first alleges that she was denied training and a promotion because of her race, in

---

[5] The United States Court of Appeals for the Fourth Circuit has held that the *McDonnell Douglas* burden-shifting scheme applies to section 1981 employment discrimination claims as well as to Title VII claims.  *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 278 (4th Cir. 2000) (citing *Patterson v. McLean Credit Union*, 491 U.S. 164, 186 (1989)).

violation of Title VII[6] and 42 U.S.C. § 1981.[7]  To establish a *prima facie* case of discriminatory

denial of training, Fountain must show that: (1) she is a member of a protected class; (2) the

County provided training to its employees; (3) Fountain was eligible for that training; and (4) she

was not provided training "under circumstances giving rise to an inference of discrimination."

*Thompson v. Potomac Elec. Power Co.,* 312 F.3d 645, 649-650 (4th Cir. 2002).  Similarly, in

order to make a *prima facie* showing of racial discrimination based on failure to promote, she

must show that "(1) she is a member of a protected group, (2) she applied for the position in

question, (3) she was qualified for that position, and (4) the defendant[] rejected her application

under circumstances that give rise to an inference of unlawful discrimination."  *Anderson v.*

*Westinghouse Savannah River Co.*, 406 F.3d 248, 268 (4th Cir. 2005).

   In this case, Plaintiff has not satisfied her burden as to the fourth element of each

test—the presence of circumstances giving rise to an inference of discrimination.  During

Fountain's deposition, she was asked whether her denial of training and failure to promote

_____

   [6] Title VII provides that "[i]t shall be an unlawful employment practice for an employer--
(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against
any individual with respect to his compensation, terms, conditions, or privileges of employment,
because of such individual's race, color, religion, sex, or national origin. . . ."  42 U.S.C. §
2000e-2 (2007).

   [7] Section 1981 provides:

      All persons within the jurisdiction of the United States shall have the
      same right in every State and Territory to make and enforce contracts,
      to sue, be parties, give evidence, and to the full and equal benefit of
      all laws and proceedings for the security of persons and property as
      is enjoyed by white citizens, and shall be subject to like punishment,
      pains, penalties, taxes, licenses, and exactions of every kind, and to
      no other.

42 U.S.C. § 1981 (2007).

claims were based on race or retaliation.  (Fountain Dep. 62:10-14, 73:4-5.)  She identified only

retaliation in both cases.  (*Id*. at 62:15-19, 73:6.)  Thus, in Fountain's own words, her race was

not the reason the County denied her admittance to the training course and failed to promote her.

In addition, Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary

Judgment makes no mention of racial discrimination at all, but rather focuses only on retaliation.

Accordingly, Plaintiff has not forecast any evidence to create a genuine issue of material fact as

to her racial discrimination claims, and Defendant's Motion for Summary Judgment is

GRANTED as to Plaintiff's racial discrimination claims set forth in Counts II and III of the

Second Amended Complaint.

## II.      Retaliation - Counts I and III

In Counts I and III of the Second Amended Complaint, Fountain alleges that she was

denied training and a promotion in retaliation for alleging sex discrimination, in violation of

Title VII and 42 U.S.C. § 1981.[8]  In order to show a *prima facie* case of retaliation, she must

show that (1) she engaged in protected activity, (2) the County took an action against her "that a

---

[8] The retaliation provision of Title VII states:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII].

42 U.S.C. § 2000e-3 (2007).

reasonable employee would have found . . . materially adverse," and (3) the action had a causal connection to the protected activity. *Burlington N. & Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405, 2415 (2006); *see also Lettieri v. Equant, Inc*., 478 F.3d 640, 650 (4th Cir. 2007).

### A.     Denial of Training

As to Count I, Defendant contends that Plaintiff's denial of training claim is time-barred because she filed her EEOC charge more than 300 days after she was not permitted to attend the training.  (Def.'s Mem. Supp. Summ. J. 14-15.)   In response, Plaintiff contends that Defendant's denial of training was "part of a continuing violation of the law" and is therefore not time-barred. (Pl.'s Mem. Opp'n Summ. J. 11-12.)

To assert a Title VII claim in federal court, plaintiffs must first exhaust their administrative remedies by filing a timely charge with the EEOC.  *Chacko v. Patuxent Inst.*, 429 F.3d 505, 508 (4th Cir. 2005).  In order for the charge to qualify as "timely," a plaintiff must file the charges within 180 days or 300 days of the alleged discriminatory incident, depending on whether the incident occurred in a "deferral state."  42 U.S.C. § 2000e-5(e)(1) (2007); *see Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 439 (4th Cir. 1998).  A "deferral state," such as Maryland, is one with "a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof." 42 U.S.C. § 2000e-5(e)(1) (2007); *see Tinsley*, 155 F.3d at 439; *EEOC v. R & R Ventures*, 244 F.3d 334, 338 n.* (4th Cir. 2001).  Thus, in order to timely file a Title VII claim in Maryland, a plaintiff must file her EEOC charge within 300 days of the alleged employment action.

In this case, Fountain's EEOC charge was filed on March 11, 2004.  Thus, only those

events occurring on or after May 16, 2003 were timely filed.  The County denied Plaintiff access

to the training on March 3, 2003, more than 300 days before the EEOC charge was filed.[9]  Thus,

the denial of training occurred outside of the statutory time period and Fountain's claims that she

was improperly denied a training opportunity are time-barred.

Plaintiff argues that the denial of training was merely one event in a pattern of retaliatory

conduct and therefore is part of a continuing violation.  (Pl.'s Mem. Opp'n Summ. J. 11-12.)

The Supreme Court has held that "discrete discriminatory acts are not actionable if time barred,

even when they are related to acts alleged in timely filed charges.  Each discrete discriminatory

act starts a new clock for filing charges alleging that act."  *Nat'l R.R. Passenger Corp. v.*

*Morgan,* 536 U.S. 101, 113 (2002).  The Court identified several discrete acts that are "easy to

identify" including "termination, failure to promote, denial of transfer, or refusal to hire."  *Id.* at

114.  While the denial of training is not specifically mentioned as a "discrete act" in the *Morgan*

case, Plaintiff clearly could have filed an EEOC charge challenging that single decision.  Thus,

this Court finds that it was a discrete act and therefore not part of a continuing violation.

As to Count III, Defendant argues that the retaliatory denial of training claim is time-

barred with respect to the training because Plaintiff first alleged a violation of 42 U.S.C. § 1981

in the Second Amended Complaint and the denial of Training occurred more than three years

before its filing.  (Def.'s Mem. Supp. Summ. J. 15.)  As 42 U.S.C. § 1981 does not specify a

---

[9] Defendant contends that Law's e-mail to Plaintiff on February 27, 2003, marks the date of the adverse employment action.  However, since this Court must make all reasonable inferences in the light most favorable to the Plaintiff, this Court construes the date Law told Plaintiff in person that she could not attend the Training—March 3, 2003—as the date of the employment action.  Regardless of which day it is, the denial of training occurred outside the 300-day filing period.

statute of limitations, the United States Court of Appeals for the Fourth Circuit has "look[ed] to Maryland law to borrow the limitations period for the most analogous state action" which in this case is the State's general three-year statute of limitations for civil actions.[10]  *Grattan v. Burnett*, 710 F.2d 160, 162 (4th Cir. 1983), *aff'd*, 468 U.S. 42 (1984).  Thus, because the denial of training occurred on March 3, 2003[11], Fountain had three years from that date, until March 3, 2006, to file a lawsuit.

Plaintiff initially filed suit in this Court on September 8, 2005, within the three-year period.  However, Defendant argues that the measure of timeliness is not that date but rather March 24, 2006, when Fountain's section 1981 claim first appeared in her Second Amended Complaint.  (Def.'s Mem. Supp. Summ. J. 15.)  Plaintiff filed her lawsuit *pro se*, and was not represented by an attorney until January of 2006.  (*See* Paper No. 8.)  However, at that point she still had over a month to properly file a second amended complaint including a section 1981 claim before the three-year limitations period expired.  Thus, this Court finds that Fountain's section 1981 claim with respect to the denial of training is time-barred, and Defendant's Motion for Summary Judgement is GRANTED as to the denial of training claims in Counts I and III.

**B.     Failure to Promote**

Plaintiff alleges that she was not promoted to a CPS II in September of 2003 in retaliation for opposing "what she in reasonable good faith believed to have been unlawful discrimination at

---

[10] Pursuant to Maryland law, "[a] civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced."  Md. Code Ann., Cts. & Jud. Proc. § 5-101 (LexisNexis 2000 & Supp. 2005).

[11] *See supra* note 9.

work."  (Second Am. Compl. ¶ 19.)

As noted above, in order to make a *prima facie* showing of retaliation, Fountain must show that (1) she engaged in protected activity, (2) the County took an action against her "that a reasonable employee would have found . . . materially adverse," and (3) the action had a causal connection to the protected activity.  *Burlington N. & Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405, 2415 (2006); *see also Lettieri v. Equant, Inc*., 478 F.3d 640, 650 (4th Cir. 2007).  The parties do not dispute that Plaintiff engaged in protected activities throughout her years of employment with the Anne Arundel County Department of Detention Facilities, mainly by opposing sex discrimination, in satisfaction of the second element.  It is likewise undisputed that Plaintiff was subject to an adverse employment action in that she was denied a promotion in September of 2003.  (*See* Roberts Aff. Ex. 7.)  Thus, she has satisfied the second element.

However, the County contends that Fountain cannot prove the third element—a causal connection between the protected activities and the adverse employment action.  (Def.'s Mem. Supp. Summ. J. 17-18.)  The Court of Appeals for the Fourth Circuit has held that proximity in time between the protected activity and the employment action is sufficient to establish the causation requirement.  *See Causey v. Balog*, 162 F.3d 795, 803 (4th Cir. 1998) (finding the thirteen-month interval between the plaintiff's charge of discrimination and termination was "too long to establish causation absent other evidence of retaliation"); *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1997) ("A lengthy time lapse between the employer becoming aware of the protected activity and the alleged adverse employment action . . . negates any inference that a causal connection exists between the two.").  In this case,

15

Fountain claims that she was retaliated against for opposing sex discrimination at the Detention Center from 1983 to 1997 and for participating in an interview on television in March of 2003. (Fountain Dep. 62:15-63:8, 64:3.)  Obviously, far too much time had passed after her activities in the 1980s and 1990s to establish a causal relationship between those events and the denial of a promotion in September of 2003 based on proximity in time alone.  Even the passage of several months between March and September negates any inference of causation.  Thus, additional evidence of causation is necessary for Fountain to make the *prima facie* showing of causation. Unfortunately, she has not presented any.

Defendant notes that "[i]t is undisputed that Fountain did not receive the position because she was not among the applicants that scored the highest during the interview process." (*Id*. at 18.)  While not undisputed, the evidence overwhelmingly points to that conclusion.  Baker essentially acts as a rubber stamp for the conclusions of the interview panel, and Fountain herself testified that she had no problems with the interviewers or how the interviews were conducted. (*See* Fountain Dep. 47:12-15, 57:13-16.)  It is also significant to note that the scores were close in range—Fountain scored only 1.7 points lower than the lowest score of a selected candidate—and she received a higher score than at least one of the selected candidates from two of the interviewers.  (*See* Roberts Aff. Exs. 1 & 7.)  Thus, there is no evidence that the interviewers had any bias or reason to hold her back.  Finally, the County places great significance on the fact that Fountain was in fact offered a promotion to CPS II in 1991 while she was "in the midst of . . . being . . . the 'instigator' and 'leader' of sex discrimination opposition."  and she turned it down to focus on her academic studies.  (*Id.*)  Based on the foregoing evidence, Fountain has failed to satisfy the third element of a *prima facie* case of

retaliation based on the County's failure to promote her in September of 2003.

Even if Fountain had forecast sufficient evidence of a causal connection, she has not presented any evidence that the County's legitimate, nondiscriminatory reason for not promoting her—that she did not receive a top score by the interview panel—was a pretext for discrimination.  Accordingly, Defendant's Motion for Summary Judgment is GRANTED as to the failure to promote claims in Counts I and III.

**CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED.  A separate Order and Judgment follows.

/s/_____
Richard D. Bennett
Date:  August 21, 2007                    United States District Judge